**NOT FOR PUBLICATION**                                        **CASE CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER BARNES, | Civil Action No. 04-6338 (SDW) |
| Plaintiff, | |
| v. | |
| | OPINION |
| HUDSON COUNTY SHERIFF DEPT., C.O. BRIAN WILKE, S.O. EUGENE CLARITT, S.O. DENNIS MATOS, S.O. THOMAS HALL, and S.O. THOMAS DeSTASIO | |
| | August 11, 2008 |
| Defendants. | |

**WIGENTON, District Judge.**

Before this Court are Defendants' Hudson County Sheriff Department, C.O. Brian Wilke, S.O. Eugene Claritt, S.O. Dennis Matos, S.O. Thomas Hall, and S.O. Thomas DeStasio (collectively "Defendants") Motions for Summary Judgment ("Motions") pursuant to Fed. R. Civ. P. 56(c) on Plaintiff Peter Barnes's ("Plaintiff") Complaint. The Court, having considered the parties' submissions, and having decided the Motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons discussed below, **GRANTS** Defendants' Motions.

**I.     JURISDICTION AND VENUE**

This Court has original jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(a).

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

At or around 7:45 a.m. on April 14, 2004, Plaintiff was waiting to be transferred from the

1

Hudson County Correctional Center ("HCCC") holding area to the Hudson County Courthouse for a bail hearing. (Plaintiff's Am. Compl. ¶ 1). Plaintiff required handcuffs prior to transfer per prison protocol. (Plaintiff's Am. Compl. ¶ 1). While being handcuffed, Plaintiff alleges he informed Hudson County Sheriff Department Officers Brian Wilks, Eugene Claritt, Dennis Matos ("Matos"), Thomas Hall, and Thomas DeStasio, (collectively "Officers") that he suffered from a shoulder ailment and requested to be restrained from the front with two handcuff sets to alleviate pain. (Plaintiff's Am. Compl. ¶ 1). Plaintiff claims he had a doctor's note indicating that he could not be handcuffed from the back with only one handcuff set. (Hudson County Sheriff Dept.'s Mat. State. Facts at ¶ 7.) Plaintiff contends that the Officers ignored his handcuff requests and used only one handcuff set to handcuff him in the back. (Plaintiff's Am. Compl. ¶ 1). Plaintiff alleges that being shackled in this manner caused him shoulder pain. (Plaintiff's Am. Compl. ¶ 1). Plaintiff complained about his shoulder pain, and claims that Matos, angered by his complaints, threw him onto a nearby desk and began assaulting him. (Plaintiff's Am. Compl. ¶¶ 1-2). Plaintiff alleges that the assault was broken-up by Corrections Officer Luis Aoyola, who then took Plaintiff to the HCCC Medical Department. (Plaintiff's Am. Compl. ¶ 2). Plaintiff was examined at the Medical Department, no significant injuries were found, and he was sent back to lock-up. (Plaintiff's Am. Compl. ¶ 2). Plaintiff purports that six days later on April 20, 2004 he was again placed in the holding area. (Plaintiff's Am. Compl. ¶ 3). While there, he claims he was harassed by unidentified officers wearing no name-tags, though never physically assaulted, and made to wait for approximately ten hours. (Plaintiff's Am. Compl. ¶¶ 3-4).

In response to Plaintiff's claims, an Internal Affairs investigation was conducted by Investigator Edward Ryan "(Investigator Ryan") and an Internal Affairs Operation Report ("the

2

Report") was prepared on or about April 26, 2004. (Def. Brian Wilks's Mat. State. of Facts at ¶16.) The Report confirmed that Plaintiff did not have a doctor's note instructing the Officers to handcuff him with two handcuff sets in the front. *Id.* Investigator Ryan ultimately concluded that the Officers committed no wrong doing, and that they followed proper prison procedure for inmate transfer. *Id.* at ¶¶ 16-17. On December 23, 2004 Plaintiff filed his initial complaint. Subsequently, he was granted leave to file an Amended Complaint, which was filed on August 28, 2007. Plaintiff's Amended Complaint alleges, *inter alia*, one cause of action against all Defendants for deprivation of his Eighth Amendment rights under 42 U.S.C. § 1983. (Plaintiff's Am. Compl. at 2.) Defendants initially filed answers to Plaintiff's Amended Complaint, all discovery was completed and now Defendants move for summary judgment.

### III. <u>LEGAL STANDARD</u>

#### A. *Summary Judgement*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant; it is material if under the substantive law, it is outcome-determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the initial burden to demonstrate that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The movant must "present a factual scenario without any unexplained gaps." *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581 (3d Cir. 1992). Moreover, where the movant is the defendant, or the party that does not have the burden of proof on the underlying

claim, it "has no obligation to produce evidence negating its opponent's case." *Id.* Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* Once the movant has carried its burden under Rule 56(c), the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). If the opposing party fails to do so, "summary judgment, if appropriate, shall be entered against the [non-movant]." Fed. R. Civ. P. 56(e). In determining whether there is a genuine issue of material fact, the Court may not weigh the evidence or determine the truth in the matter. *Anderson*, 477 U.S. at 249. Moreover, the Court must draw all reasonable inferences in favor of the non-movant. *Id.* at 255. It is on this standard that the Court adjudicates the pending Motions.

## IV. DISCUSSION

Actions allegedly arising under 42 U.S.C. § 1983 require a plaintiff to allege (1) the deprivation of a right secured by the Constitution or laws of the United States, (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In the matter at hand, Plaintiff alleges an excessive force claim against Defendants in violation of his Eighth Amendment rights entitling him to recovery under 42 U.S.C. § 1983. Defendants argue in opposition that Plaintiff's claims are barred because: (1) Plaintiff has failed to demonstrate any constitutional deprivation entitling him to statutory recovery; (2) Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"); and (3) even if Plaintiff could substantiate his constitutional claim and satisfy the PLRA's requirements, Defendants are entitled to qualified immunity under *Harlow v. Fitzpatrick*, 457 U.S. 800 (1982). As a threshold matter, this Court finds that Plaintiff has presented no evidence other than his own self-serving testimony that

4

Defendants have violated his Eighth Amendment rights, or that he has satisfied the PLRA's mandatory administrative exhaustion requirements.[1]

### A. *Plaintiff has failed to establish a viable Eighth Amendment Excessive Force Claim*

The treatment an inmate receives in prison and the conditions under which he is confined "are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment of the United States Constitution prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981). The standard used to determine "cruel and unusual" is whether the punishment is an "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling*, 509 U.S. at 32. However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

To state a claim under the Eighth Amendment, an inmate must assert that his punishment was objectively and subjectively cruel and unusual. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component is satisfied only when the deprivations alleged deny the prisoner "the minimal civilized measure of life's necessities." *Helling*, 509 U.S. at 32 (Quoting *Rhodes*, 452 U.S. at 346). Additionally, the deprivations must be serious, because only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMilian*, 503 U.S. 1, 9 (1992). A plaintiff can satisfy the objective component if he can show that the alleged conditions of confinement deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing,

---

[1] The Court declines to address Defendants' qualified immunity argument on mootness grounds.

shelter, sanitation, medical care, and personal safety. *Rhodes*, 452 U.S. at 347-48; *Young v. Quinlan*, 960 F.2d 351, 364 (3rd Cir. 1992). However, the Constitution does not mandate that prisoners be comfortable while incarcerated. *Rhodes*, 452 U.S. at 349. Prison conditions that are "restrictive" or "harsh" are merely part of the penalty that criminal offenders pay for their offenses. *Id.* at 347. The subjective component requires that the state actor have acted with "deliberate indifference," which imputes a state of mind of reckless disregard on the actor. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Wilson*, 501 U.S. at 303. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials were aware of substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J. 1997).

Despite the fact that Plaintiff's Eighth Amendment excessive force claim is barred because he has not exhausted his mandatory administrative remedies under the PLRA, even if he had done so, his § 1983 claim would still *prima facie* fail. Plaintiff alleges that Defendants used excessive force in handcuffing and assaulting him in violation of his Eighth Amendment rights. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Where the claim is one of excessive force, the Court's inquiry is limited to determining "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal citation omitted); *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). The Third Circuit has held that there are five relevant factors to the ultimate determination of whether force was used in "good faith" or "maliciously and sadistically":

1) the need for the application of force; (2) the relationship between the need and the

amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

While Plaintiff was an HCCC pretrial detainee awaiting courthouse transport, Matos attempted to handcuff Plaintiff who protested and indicated that he had a doctor's note stating that he could not be handcuffed in the back with only one handcuff set due to a prior shoulder surgery. (Def. Matos' Br. at Ex. B, 6:14-22; 17:8-14; 20:25; 22:23-23:25.) According to Dr. Laurence Wynn ("Dr. Wynn"), HCCC's resident physician, however, there was no doctor's note or order indicating Plaintiff's correct handcuffing procedure. (Def. Matos' Br. at Ex. C, ¶ 8.)

Furthermore, Plaintiff has offered no evidence to suggest that force was inappropriately applied by Defendants, or that force was used for any purpose other than in good faith to handcuff him. Plaintiff was resisting the Officers' handcuff attempts, which resulted in the need for the application of force to restrain him before courthouse transfer. Plaintiff required restraint prior to transfer per HCCC policy, and his refusal to cooperate necessitated the need for force based on his size at the time, 5'11" and 312 pounds. Although Plaintiff alleges that his shoulder was injured in the altercation, he confirmed during his deposition that he suffered no permanent arm or shoulder injury. (Def. Matos' Br., Ex. A, at p. 76, lines 5-8.) Due to Plaintiff's size and refusal to cooperate with the Officers' directives, he presented a substantial threat not only to the Officers on duty, but to the other holding area prisoners awaiting transport. As such, Defendants acted appropriately and accordingly to the perceived threat by using force to subdue him. Finally, once Plaintiff was under custodial control by the Officers, he was immediately taken to the HCCC Medical Department for

a full examination based on his shoulder pain complaints. At no time did Defendants ever maliciously or sadistically attempt to injure Plaintiff; they merely subdued and restrained him in accordance with HCCC transfer protocol.

Consequently, Defendants' actions against Plaintiff do not yield an unnecessary and wanton infliction of pain, but a lawful and proper good faith use of force to resolve and maintain discipline and order. Plaintiff, therefore, can not substantiate an Eighth Amendment cruel and unusual punishment claim against Defendants. In the absence of an eyewitness account, corroborating documentation or other supporting evidence, Plaintiff has only his own self-serving testimony, which is insufficient on summary judgment. In light of the foregoing and the lack of evidentiary proof presented by Plaintiff, no jury could reasonably find that Defendants violated Plaintiff's Eighth Amendment right against excessive use of force during the April 14, 2004 incident. Summary judgment is therefore awarded to Defendants on Plaintiff's Eighth Amendment excessive force claim as no genuine issue of material fact exists.

**B.** *The PLRA's impact on Plaintiff's Eighth Amendment Excessive Force Claim*

The PLRA states that "**[n]o action** shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added.) 42 U.S.C. § 1997e(a).[2] It follows that if a plaintiff has not properly exhausted the available administrative remedies, a federal court must dismiss the case. *Woodford v. Ngo,* 548 U.S. 81 (2006).

---

[2] The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Pursuant to the foregoing definition, at the time of the alleged incident Barnes was a PLRA pretrial detainee.

Grievance procedures in inmate handbooks are administrative remedies that must be exhausted under the PLRA prior to suit. *Concepcion v. Morton*, 306 F.3d 1347, 1348-49 (3d Cir. 2002). The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The administrative process must be followed to completion before suit may be brought in federal court; a prisoner does not exhaust administrative remedies until a grievance is fully pursued through each level of appeal available in the prison's system. *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000); *Spruill v. Gillis*, 372 F.3d 222 (3d Cir. 2004). Indeed, administrative remedy exhaustion is required "even if (1) the prisoner believes such administrative remedies to be ineffective, or (2) the available administrative process cannot grant the desired remedy." *Camino v. Scott*, 2006 WL 1644707 at *3 (D.N.J. 2006) (*citing Booth v. Churner*, 532 U.S. 731, 739-41 (2001)).[3] Failure to exhaust administrative remedies is an affirmative defense and defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." *Kounelis v. Sherrer*, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005) (*citing Spruill*, 372 F.3d at 223 n.2).

In the matter at bar, Defendants have satisfied their PLRA burden of pleading and proving the exhaustion affirmative defense. Defendants have rightfully argued that Plaintiff has failed to provide any contrary information, or any documentation for that matter, demonstrating that he initiated, much less exhausted, his administrative remedies before bringing this action. Based on the

---

[3] However, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n. 4 (3d Cir. 2000) ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

motion record presented, Plaintiff never filed a grievance form or completed any level of appeal. (Def. Matos' Br. at 5.) As a result, Plaintiff's § 1983 claim must be dismissed on summary judgment as a matter of law based on his failure to exhaust mandatory administrative remedies under the PLRA.

### C. *Plaintiff's §§ 1983 and 1985 Claims*

Section 1983 of Title 42 subjects to liability:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.

In order to establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law and that this conduct deprived the plaintiff of his rights, privileges, and immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)). "The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(citing *Graham v. Connor*, 490 U.S. 386, 394 (1989), and *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Likewise, in order to state a claim under § 1985, a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Section 1985 actions are limited to conspiracies

10

predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake*, 112 F.3d at 685 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).

In the instant matter, Plaintiff has failed to satisfy any of the requisite elements under either statutory section. With regard to Plaintiff's § 1983 claim, as set forth at length, *infra*, Plaintiff has *prima facie* failed to establish a deprivation of any constitutional or statutorily protected right. Therefore, as a threshold, Plaintiff cannot make out a sustainable § 1983 claim and the Court must dismiss his claim on summary judgment in favor of Defendants. Symbiotically, Plaintiff has not evidenced any conspiracy or discrimination based upon race or membership in any protected class as required under § 1985. Furthermore, Plaintiff has not shown any act in furtherance of a purported conspiracy or how he has suffered any injury or right deprivation as a result thereto. Consequently, Plaintiff's § 1985 claim is unsustainable and properly disposed of on summary judgment in favor of Defendants.

## V. CONCLUSION

For the foregoing reasons, Defendants' Summary Judgment Motions pursuant to Fed. R. Civ. P. 56(c) are hereby **GRANTED**. Plaintiff's Amended Complaint is dismissed in its entirety with prejudice and the Clerk of the Court shall remove this case from the Court's active docket.

**SO ORDERED.**

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo U.S.M.J.